UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN BROOKS,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>BRIAN WILLIAMS, *et al.*,<br>　　　　　　　　　Defendants. | Case No. 2:20-cv-00026-ART-EJY<br><br>ORDER REGARDING DEFENDANT RITZ'S PARTIAL MOTION FOR SUMMARY JUDGMENT (ECF NO. 35) AND MOTION TO STAY (ECF NO. 37). |

**I. SUMMARY**

Plaintiff Kevin Brooks ("Brooks") is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"). Brooks brought this action pursuant to 42 U.S.C. § 1983 against warden Brian Williams, assistant warden J. Nash, and caseworker Anthony Ritz after Brooks was fired from his job in the law library at High Desert State Prison ("HDSP"). (First Amended Compl., ECF No. 11). Judge Gordon screened Brooks' First Amended Complaint ("FAC") and dismissed Defendants Williams and Nash with prejudice but allowed Brooks' Equal Protection claim to proceed against Defendant Ritz. (ECF No. 15 at 7). Before the Court are Defendant Ritz's Partial Motion for Summary Judgment (ECF No. 35) and Motion to Stay Case (ECF No. 37). For the reasons explained in this order, this Court grants Ritz's Partial Motion for Summary Judgment, and denies his Motion to Stay as moot.

**II. BACKGROUND**

Prior to May 2017, Brooks worked in the law library at HDSP. This work assignment carried with it certain privileges that were reserved to inmates in the HDSP workers' unit. (ECF No. 11 at 4). The privileges included the ability to move to certain locations within the prison without an escort, and all-day access to

prison amenities, including showers and telephones. (*Id.*).

On June 5, 2017 a member of prison staff and non-party, Ms. Murray, allegedly found Brooks and another law library worker, Jack Seka ("Seka"), "going to the same quad." (ECF No. 35-2 at 2). On June 6, 2017, Defendant Ritz wrote a case note that indicated Brooks had not been told to visit that quad on that day and noted that Operational Procedure ("OP") 720.02(1) allowed workers in the law library to make visits to inmates who cannot access the library. (*Id.*). Ritz did not believe Brooks and Seka had any reason to visit that particular area, as inmates housed there had access to the law library twice a week. (*Id.*). The same day, a Full Classification Committee ("FCC") composed of Ritz and two other prison staff members concluded that Brooks was "no longer appropriate for a law library worker position and will be unassigned. . . ." (*Id.*).

Whether Brooks was suspended or fired from his job at the law library is disputed. Brooks claims Ritz called him and Seka into a meeting and told them they were being suspended from their jobs, but Ritz did not give a reason for their suspension. (ECF No. 11 at 5). Brooks alleges he was never given a hearing or a disciplinary write-up before or after the suspension, even though he was "level reduced" twice—resulting in the loss of privileges and good time credits. (*Id.* at 5-6). Defendant Ritz claims Brooks was not suspended but "removed" from his job on June 6, 2017. (ECF No. 35 at 2).

On June 19, 2018, Brooks filed his first "informal" grievance in this matter more than a year after his alleged suspension occurred. (ECF No. 35-3 at 1). Brooks claimed that Defendant Ritz had violated his Fourteenth Amendment rights by suspending him from his job without a hearing and preventing him from being considered for at least five additional jobs, resulting in his loss of privileges and good time credits. (*Id.* at 2-3). On July 6, 2018, the grievance coordinator responded that the grievance was untimely. (*Id.*). Brooks signed for the grievance on August 16, 2018 and noted that he disagreed with the determination. (*Id.*).

Also on August 16, 2018, Brooks appealed his "informal" grievance to the "first level." (*Id.* at 6). Brooks wrote that he "was not fired or wrote-up" but was suspended and believed that the "suspension [was] still pending, to the best of my knowledge." (*Id.*). Brooks argued that his grievance could not be untimely because the suspension was an ongoing condition. (*Id.*). This appeal was also summarily denied as untimely on September 24, 2018, and Brooks signed for the grievance on December 10, 2018.

At some point in late 2018 or early 2019, Brooks filed a third appeal to the "second level." (ECF No. 35 at 3). Original documentation for this third appeal is missing from the record because it has "not yet been discovered" but a summary of the relevant grievance is provided. (ECF Nos. 35 at 2 fn.1; 35-5).

The parties disagree about what happened next. Ritz claims that NDOC responded to Brooks, advised him that NDOC will not respond to an improper grievance that results in abuse of the grievance process, but provided Brooks the opportunity to receive a "fully researched" response if Brooks resubmitted all of his grievances and related documents. (ECF Nos. 35 at 3:4-7; 35-5 at 4). Ritz claims Brooks did not resubmit the required documents to obtain a "fully researched" response. (ECF No. 35 at 3:7-9). Brooks argues that he "does not remember this memo" from NDOC in response to this third appeal and believes it was never communicated to him. (ECF No. 39 at 6). The summary of the grievance report indicates "inmate signed on 3/11/2019," presumably for the grievance memo at issue here, but it also includes a note from Brooks dated four days later, on 3/15/2019, that indicates he believes he did not receive a response "I have waited well over the requested 45 days . . . and I have still not received an answer. . . ." (ECF No. 35-5 at 4).

On January 6, 2020, Brooks filed his initial Complaint in this action, which was later amended. (ECF Nos. 1; 11). After mandatory screening this Court allowed Brooks to proceed on one count of Fourteenth Amendment Equal

1  Protection violations against Defendant Ritz. (ECF No. 15).

2  Defendant Ritz argues that summary judgment should be granted in his favor
3  because Brooks failed to exhaust his administrative remedies and initiated this
4  action outside the statute of limitations for § 1983 actions. (ECF No. 35 at 3:18-
5  20). Because this Court finds that Brooks did not exhaust his administrative
6  remedies, it does not reach Ritz's statute of limitations argument.

### III. LEGAL STANDARD

### A. Motion for Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine

1  whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**B. Timely Administrative Exhaustion**

The Prison Litigation Reform Act of 1996 (PLRA) requires inmates exhaust their administrative remedies prior to bringing an action in court. 42 U.S.C. § 1997e. "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Therefore, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]" *Id.* at 88. "'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). "The Supreme Court has clarified that the unavailability of administrative remedies due to missed deadlines does not render such remedies "exhausted" under the PLRA, nor does it excuse a failure to exhaust." *Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017) (citing *Woodford*, 548 U.S. at 90–93).

## IV. DISCUSSION

### A. Timely Administrative Exhaustion

Here, the Court finds that Brooks' action accrued forty-five days after the alleged suspension took place. Because the relevant NDOC regulation provided him six months to file his grievance from the date of injury, and Brooks filed his first informal grievance about a year later, the Court agrees with Defendant Ritz that Brooks failed to exhaust his administrative remedies and grants Ritz's Partial Motion for Summary Judgment (ECF No. 35) on that basis.

In § 1983 prisoners' civil rights actions the "accrual trigger [is] fixed to the inmate's knowledge of the injurious event." *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018). Here, Defendants argue that the injurious event occurred on June 6, 2017, when Brooks was fired from his job at the law library. (ECF Nos. 35 at 2; 40 at 7). Brooks characterizes the June 6, 2017, event as a *suspension* rather than a termination, and alleges that the suspension was an ongoing condition, rather than a discrete event. (ECF No. 39 at 5). Specifically, Brooks argues that he believed NDOC staff when they advised him that he was suspended (rather than terminated), and understood "this was either regular suspension procedure, or he was being investigated pursuant to A.R. 707(5)(6)" either of which would have led to a "reasonable delay" and waited to file his grievance based on these representations. (*Id.* at 7). The "Case Note Printout Report" Ritz attaches to his Partial Motion for Summary Judgment indicates that on June 6, 2017, the full classification committee ("FCC") concluded Brooks was "no longer appropriate for a law library worker position and will be unassigned per OP [Operational Procedure] 563.05 #15. . ." but it is not clear from the record how this was communicated to Brooks. (ECF No. 35-2 at 2). Brooks alleges there was no hearing or write-up before or after to his termination/suspension. (ECF No. 11 at 6).

Operational Procedure ("OP") 563 states that "an inmate pending resolution of

6

disciplinary charges may be suspended from a work assignment" until the completion of the disciplinary process. (*Id.* at 7). NDOC's disciplinary process is governed by Administrative Regulation ("AR") 707 and 707.1. AR 707 provides that the inmate who is alleged to have committed a disciplinary violation shall be served notice of a disciplinary hearing within 15 days after the date of discovery of the violation. AR 707.01(10)(O). AR 707.1 provides that a disciplinary hearing shall take place within 30-calendar days after the notice of charges is served absent exceptional circumstances. AR 707.1(3)(C)(3).

Under NDOC regulations, therefore, Brooks had knowledge of the injurious event—that he was suspended/terminated *without* the required hearing being conducted, *see Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974)—no later than 45 days after his initial suspension/termination. Accordingly, the Court concludes that Brooks' action accrued no later than July 21, 2017.[1]

NDOC's grievance procedures are governed by AR 740. NDOC AR 740.054(A) provides that personal injury grievances and "civil rights claims" must be filed within six months in accordance with NRS 209.243. (ECF No. 35-4 at 8). NRS 209.243 further provides that this six-month clock begins on "the date of the alleged loss, damage, or injury." Untimely claims—those not filed by the deadlines in 740.054—are deemed abandoned. (ECF No. 35-4 at 8). Here, as noted above,

---

[1] In his informal grievance, Brooks notes that he was denied further employment by Defendant Ritz even after being suspended from his job at the law library. (ECF No. 35-3 at 2-4). However, Brooks neither alleges in his First Amended Complaint nor argues in his Response to Ritz's Motion for Summary Judgment that the denial of new employment was the injury at issue in this case, and provides no dates or times of the alleged denials in the record. Without a claim or details regarding that nature and timing of being denied other employment, this Court cannot consider this argument as a basis to excuse Brooks delay in grieving his alleged suspension. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Hibbs v. HDM Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to address an "argument . . . too undeveloped to be capable of assessment").

7

1   Brooks had a concrete reason to file a grievance no more than 45 days after his
2   suspension, as AR 707's guidelines explain that, absent exceptional
3   circumstances not alleged in this action, a hearing must be provided within 45
4   days after the alleged injurious event, and Brooks claims no hearing was ever
5   provided. (ECF No. 11 at 6).

6   Brooks argues that, because he was allegedly told he was suspended, rather
7   than terminated, his deprivation was "ongoing" such that it was impossible for
8   his grievance to be untimely, and that there was no ongoing remedy for
9   continuing violations. (ECF No. 39 at 10). Under these facts, the Court cannot
10  countenance that argument because there is no evidence in the record
11  establishing Brooks' claim that there was no available remedy for suspensions
12  from prison employment that result in loss of good-time credits without the
13  applicable disciplinary hearing. Rather, read together, AR 707 and 740 indicate
14  that a grievance process is available so long as a prisoner incarcerated in an
15  NDOC facility files their first informal grievance less than six months after the
16  last date a timely hearing under AR 707 could have occurred. Brooks failed to do
17  so.

18  Because Brooks failed to timely file his first informal grievance, HDSP never
19  responded on the merits to his grievance, *see Reyes v. Smith*, 810 F.3d 654, 657
20  (9th Cir. 2016), and "the unavailability of administrative remedies due to missed
21  deadlines does not render such remedies 'exhausted' under the PLRA, nor does
22  it excuse a failure to exhaust[,]" this Court grants Defendant Ritz's Partial Motion
23  for Summary Judgment. (ECF No. 35); *Manley*, 847 F.3d at 712 (citing *Woodford*,
24  548 U.S. at 90–93).

25  **V. CONCLUSION**

26  The Court notes that the parties made several arguments and cited to several
27  cases not discussed above. The Court has reviewed these arguments and cases
28  and determines that they do not warrant discussion as they do not affect the

8

outcome of the issues before the Court.

It is therefore ordered that Defendant Ritz's Partial Motion for Summary Judgment (ECF No. 35) is GRANTED.

It is further ordered that Defendant Ritz's Motion to Stay Case (ECF No. 37) is DENIED as moot.

The Clerk of Court is respectfully directed to close this case.

It is so ordered.

DATED THIS 24th day of January 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

9